## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**LEONETTI'S FROZEN FOODS, INC.**                                                **PLAINTIFF**

**V.**                              **CASE NO. 5:15-CV-5242**

**CREW, INC. d/b/a REW MARKETING, INC.**                                          **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant Crew, Inc.'s ("Crew") Motion for Summary Judgment (Doc. 30), Statement of Facts in Support (Doc. 31), and Brief in Support (Doc. 32); Plaintiff Leonetti's Frozen Foods, Inc.'s ("Leonetti's") Response to Statement of Facts (Doc. 33), Statement of Disputed Facts in Opposition (Doc. 34), and Memorandum of Law in Opposition (Doc. 35); and Crew's Reply Brief in Support (Doc. 37). For the reasons given below, Crew's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Leonetti's is a Pennsylvania manufacturer of frozen food products, who hired Crew as a broker in August 2014 to market and sell a couple of frozen stromboli products to Sam's Club, a national membership-only warehouse store. One of those products, "Leonetti's Frozen Stromboli," would be for consumers to purchase and take home from Sam's Club frozen-food sections; the other product, "Café Stromboli," would be for consumers to purchase and consume on-site at Sam's Club cafes. At the time Leonetti's hired Crew to manage its Sam's Club account, Crew had already been managing the Leonetti's account with Costco—a competitor of Sam's Club—for roughly seven months.

1

From August 2014 through January 2015, Leonetti's worked to develop Café Stromboli, and underwent the testing and approval process for both products, in an effort to meet Sam's Club's specifications. On January 14, 2015, a "hold test" was conducted, in which "the stromboli is cooked and then placed under heat lamps for 1 hour to ensure that the stromboli holds its internal temperature." (Doc. 8, ¶¶ 49–50). Later that day, Crew's Chief Operating Officer, Cindy Towler,[1] *see* Doc. 30-1, p. 2, sent the following email to various employees of Sam's Club who were participating in this process:

> John and Jeremy good day! I completed the in-club testing this morning at the Bentonville Sam's Club. Test went extremely well. I used 8 Stromboli's in the test. The additional samples were used to determine where to start the pans as the temperature and times were not set at 485* - 6 minutes. The ovens were set at 500* - 6:30, club associate said they started the pizzas at the entrance of the oven and recommended we do the same. I found that the top oven cooked hotter than the 2nd and 3rd oven. While the top oven did not burn the Stromboli they were a little darker than we like to have.
>
> Attached is a recap of the testing.
>
> Please let me know if you have any questions and what our next steps will be.

(Doc. 30-4, p. 2).

Later that evening, Crew's President, Jeff Campigli, *see* Doc. 30-1, p. 3, sent a reply-all email that stated "Nice job Cindy. Robert and I could even use slides 2-5 in our Costco Presentation next week :)," (Doc. 30-4, p. 2). The next morning, after being alerted that he had inadvertently sent the email as a reply-all rather than solely to Ms. Towler, Mr. Campigli sent Sam's Club a follow-up email profusely apologizing, explaining that his email "was a very poor attempt at humor and meant for Cindy only," and assuring Sam's

---

[1] It appears Cindy Towler's surname was "Romines" at the time the events giving rise to this lawsuit occurred.

Club that Crew "would never share testing, conducted exclusively for you, with any customer . . . especially your #1 competitor." *See id.* at 1. A few weeks later on February 3, John Hawthorne from Sam's Club informed Ms. Towler that it would not be purchasing frozen food from Leonetti's because temperature inconsistencies rendered it "an unacceptable product to put in front of the Members." *See* Doc. 30-5, p. 1.

On July 7, 2015, Leonetti's filed a complaint against Crew in the Philadelphia County Court of Common Pleas, which Crew removed to the United States District Court for the Eastern District of Pennsylvania on July 29, 2015. On September 30 of that same year, that Court ordered venue transferred to the United States District Court for the Western District of Arkansas. In its First Amended Complaint, (Doc. 8), Leonetti's brings four claims against Crew—for negligence, breach of contract, breach of fiduciary duty, and trade libel—all of which are premised on the factual allegation that Mr. Campigli's email caused Sam's Club to decide not to purchase any Leonetti's products. *See* Doc. 30-2, p. 8. Crew has moved for summary judgment on all four of Leonetti's claims, arguing there is no genuine dispute that Mr. Campigli's email was not the proximate cause of Sam's Club's decision not to purchase Leonetti's products. Naturally, Leonetti's opposes this Motion. The Motion has been fully briefed and is ripe for decision.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the non-moving party, and give the non-moving party the benefit of any logical inferences that can be drawn from the facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211,

3

1212–13 (8th Cir. 1997). The moving party, Crew, bears the burden of proving the absence of any material factual disputes. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). If Crew meets this burden, then Leonetti's must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). These specific facts must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. DISCUSSION

Since venue of this lawsuit was transferred from Pennsylvania under 28 U.S.C. § 1404(a), this Court applies Pennsylvania's choice-of-law rules for determining which state's law governs. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Thorn v. IBM*, 101 F.3d 70, 72–73 (8th Cir. 1996). But under those rules, no choice needs to be made if there is no conflict between the states' laws. *Budtel Assocs., LP v. Cont'l Cas. Co.*, 2006 Pa. Super. 370, at ¶ 9 (2006).

With regard to theories of liability sounding in tort, such as the claims in this case for professional negligence, breach of fiduciary duty, and trade libel, both Arkansas and Pennsylvania law require a claimant to prove proximate causation of his damages. *See, e.g.*, *Sherk v. Daisy-Heddon, a Div. of Victor Comptometer Corp.*, 498 Pa. 594, 602 (1982) ("It is well established that [p]roof of injury alone, without more, or of the existence of the negligent condition without showing that it caused the injury complained of, is insufficient to establish a case of liability." (internal alterations omitted)); *Grain Dealers Mut. Ins. Co.*

4

*v. Porterfield*, 287 Ark. 27, 31 (1985) ("A mere possibility of causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.").

However, with regard to breach of contract, the picture is less clear. Thus, for the sake of simplicity the Court will first discuss whether there is any material dispute of fact as to whether Mr. Campigli's email proximately caused damage to Leonetti's. Then the Court will turn to the issue of what implications this has for the contract claim.

## A. Proximate Cause

There is powerful evidence in the record that Mr. Campigli's email did not cause Sam's Club not to purchase frozen food from Leonetti's. In his deposition, Mr. Hawthorne testified that he decided not to purchase Leonetti's products for Sam's Club cafes because "[w]e could never get to the quality that we needed it to be." (Doc. 30-3, p. 13). He further testified that he did not "for a moment take [Mr. Campigli's] email as being serious." *See id.* at 17. The email he sent Ms. Towler informing her of his decision stated, in its entirety:

> We have tried and tried several revisions of this product. And to be honest, the very first version was the best. We did, as you know, have several temperature problems from day one. Cindy, you and your team are well aware of the efforts put forth. We battled cold pockets several times and a change in cheese (which lowered quality) and then finally get the temperature consistent. We tested on January 14 here in our kitchens and the bottoms burned. It would be an unacceptable product to put in front of the Members. Most importantly, we have not yet had a version of the Stromboli that I have found acceptable to take to a taste panel.
>
> I would like to put this product on the shelf. We sincerely appreciate all your efforts and hard work to try and make this work.
>
> Thank you, Cindy. Please let me know if you have any questions.

5

John Hawthorne
Cafe Buyer

(Doc. 30-5, p. 1).

Leonetti's, on the other hand, has not pointed to any evidence that the decision was actually caused by Mr. Campigli's email. It argues that Ms. Towler's deposition testimony "contradicted" Mr. Hawthorne's on this point, *see* Doc. 35, pp. 13–14, but in fact Ms. Towler testified that on the day after Mr. Campigli's email was sent, Mr. Hawthorne told her "that he knew it was not intentional and that it was just cooking instructions. It was not the best in the world, but it wasn't the worst. We're all human; it's not a big deal, and *it would not affect how we moved forward*." (Doc. 34-1, p. 68) (emphasis added).

Leonetti's also argues that "there is substantial evidence showing the Leonetti's [products] passed ever[y] test leading up to the Campigli email," (Doc. 35, p. 13), but this characterization of the record is only correct if "ever[y] test leading up to" is construed as meaning "the one test immediately preceding." All three deponents from Sam's Club, Crew, and Leonetti's consistently testified that Leonetti's struggled mightily with meeting Sam's Club's temperature requirements, though as one might expect, they had different recollections of the finer details and different perspectives on why the difficulties occurred. *See, e.g.*, Doc. 30-3, pp. 8–10 (Mr. Hawthorne testifying about the specific temperature problems he was referring to in his email to Ms. Towler); Doc. 34-1, p. 60 (Ms. Towler testifying that the products passed one "hold test" out of ten); *id.* at 80–81 (Leonetti's co-owner Robert Ippaso, testifying that the difficulties occurred because Sam's Club's temperature specifications were unreasonable and the testers were not chilling the

6

products correctly).  And there is undisputed evidence in the record that one of the products being tested burned only two days before Mr. Campigli's email was sent. *See id.* at 107.

Ultimately, the only evidence in the record to support the contention that Mr. Campigli's email caused Sam's Club not to purchase the products, is the bare fact that the decision not to purchase was made only a few weeks after Mr. Campigli's email was sent.  There is no documentary or testimonial evidence anywhere in the record that any person in the decision-making process based the decision in any way on Mr. Campigli's email, and there *is* evidence that they did *not*.  To permit the issue of causation to reach a jury on this record would be to invite pure speculation from the finder of fact.  "While the question of proximate cause is usually a question for the jury" under Arkansas law, nevertheless, "conjecture and speculation cannot be permitted to replace proof." *Skinner v. R.J. Griffin & Co.*, 313 Ark. 430, 433–34 (1993).  Even viewing the record in the light most favorable to Leonetti's, there is no material factual dispute that Mr. Campigli's email did not cause Sam's Club not to purchase Leonetti's products.  Accordingly, the Court will grant summary judgment in favor of Crew on Counts I, III, and IV of the First Amended Complaint.

## B.  Breach of Contract

The Court turns now to the question of what impact this finding has on the sole remaining claim for breach of contract.  The parties both appear to be operating under the assumption that under both Arkansas and Pennsylvania law, the party bringing a claim for breach of contract must prove causation; at least, neither party has contended otherwise.  But if this is their belief, then they are incorrect.

Under Arkansas law, "causation is not an element of a claim for breach of contract."

*Crumpacker v. Gary Reed Const., Inc.*, 2010 Ark. App. 179, at *3 & n.2; *see also Clark v.*

*Ridgeway*, 323 Ark. 378, 389 (1996) ("On another point, whether sufficient facts support

proximately caused damages is no longer relevant. . . . We have held in this opinion that

Ridgeway is immune from a negligence claim . . . . The only viable claim is breach of

contract, and proximate causation is not an essential element to a finding of damages

due to contractual breach."); *cf. S. Farm Bureau Cas. Ins. Co. v. Daggett*, 354 Ark. 112,

136–37 (2003) (remanding "for a determination of what damages, *if any*," resulted from a

breach of contract that "did, in fact," occur (emphasis added)). An action for breach of

contract may be maintained where only nominal damages can be proved—though the

inability of a claimant to prove more than nominal damages is something this Court must

consider if called upon to determine what a reasonable attorney's fee should be for the

prevailing party at trial. *See Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 258–60 (1999);

AMI 2401, cmt. (2017 ed.) ("Under Arkansas law, actual damage caused by the breach

is not an essential element of a claim for breach of contract because a plaintiff is entitled

to recover nominal damages in the absence of proof of actual damages."); AMI 2442, cmt.

(2017 ed.) ("Causation of damages is included in this damage instruction, rather than the

issue instruction for breach of contract, because a plaintiff is entitled to recover nominal

damages in the absence of proof of actual damages.").[2]

---

[2] The Court would be remiss not to acknowledge that there are some cases that state in
passing that one of the elements for breach of contract under Arkansas law is "damages
resulting from the breach." *See, e.g., Nat. Union Fire Ins. of Pittsburgh, PA v. Graham*,
2014 WL 1316930, at *2 (E.D. Ark. Apr. 1, 2014); *Smith v. Eisen*, 97 Ark. App. 130, 139
(2006); *Rabalaias v. Barnett*, 284 Ark. 527, 528–29 (1985); *Williams v. J.W. Black Lumber
Co.*, 275 Ark. 144, 147 (1982). But in all of these cases, the references to a causation
element are dicta and unrelated to the issues being decided. The Court does not believe

8

As for Pennsylvania, it appears from this Court's independent research that there is split intermediate appellate authority on whether proximate causation is an element of a claim for breach of contract under that state's law. *Contrast, e.g.*, *James Corp. v. North Allegheny Sch. Dist.*, 938 A.2d 474, 498 (Pa. Commw. Ct. 2007) ("To prove breach of contract, School District must show Architect breached a duty imposed by the contract and such breach proximately caused Contractor's damages."), *and Logan v. Mirror Printing Co. of Altoona, Pa.*, 410 Pa. Super. 446, 448–49 (1991) ("In order to recover damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss."), *with Grabowski v. Quigley*, 454 Pa. Super. 27, 41 (1996) ("A cause of action [for breach of contract] exists even if no compensable loss can be shown because any breach gives rise to at least nominal damages."). This Court has been unable to find any cases in which the Pennsylvania Supreme Court resolved the issue, though it should be noted that the intermediate appellate split appears to preponderate heavily towards the requirement that proximate causation be proved. *See Red Bell Brewing Co. v. Buchanan Ingersoll, P.C.*, 2001 WL 1807775, at *6 n.11 (Pa. Ct. C.P. Mar. 13, 2001). Given the near-uniformity of Pennsylvania intermediate appellate authority, this Court believes that if the Pennsylvania Supreme Court were presented with the issue, it would affirm that proximate causation is a necessary element of a contract claim under Pennsylvania law.

Thus, since there is a "true conflict" between Arkansas and Pennsylvania law as to whether causation is an element of a contract claim, this Court must determine which

---

these cases overcome, or create a split in authority between, the authorities discussed above in the body of this opinion which specifically address whether causation is a necessary element of a claim for breach of contract under Arkansas law.

9

state "has the greater interest in the application of its law to the question now before us," by qualitatively considering each state's contacts with the facts of this case. *See McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 109 (Pa. Super. Ct. 2015). The Court believes that under this standard, Arkansas substantive law governs the claims in this case; and it would appear the parties agree so as well. *Compare* Doc. 32, p. 6 (arguing that Arkansas law controls if there is any conflict), *with* Doc. 35, pp. 11–12 (citing exclusively to Arkansas law). The only connection the state of Pennsylvania has to this case is that Leonetti's is headquartered in that state. But Crew and Sam's Club are both headquartered in Arkansas, and the events giving rise to this lawsuit—namely, the receipt of Mr. Campigli's email and the decision not to purchase the frozen food products— appear to have occurred in Bentonville. *See* Doc. 34-1, p. 3.

Therefore, the Court will deny Crew's Motion for Summary Judgment with respect to Leonetti's claim for breach of contract, since (1) Arkansas law governs the substance of the contract claim, (2) causation is not an element of contract claims under Arkansas law, and (3) Crew has not moved for summary judgment on any issue other than causation. However, since the Court has found as a matter of law that Leonetti's cannot prove causation of damages under its theory of the case, the Court will not permit Leonetti's to recover greater than nominal damages if it prevails at trial. In any event, the prevailing party at trial will be entitled to recover "a reasonable attorney's fee," Ark. Code Ann. § 16-22-308, though as noted above, the fact that Leonetti's may not recover more than nominal damages will factor into any determination of reasonableness of attorney fees that this Court ultimately makes.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Crew, Inc.'s Motion for Summary Judgment (Doc. 30) is **GRANTED IN PART AND DENIED IN PART** as follows: Counts I, III, and IV of Plaintiff Leonetti's Frozen Foods, Inc.'s First Amended Complaint, (Doc. 8), for professional negligence, breach of fiduciary duty, and trade libel, respectively, are **DISMISSED WITH PREJUDICE**.  Count II, for breach of contract, survives for trial.

**IT IS SO ORDERED** on this _____ day of January, 2017.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

11